UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LA VELL HARRIS,<br><br>    Plaintiff,<br><br>    vs.<br><br>CLEARLAKE POLICE DEPARTMENT, et al.,<br><br>    Defendants. | Case No.: 12-0864-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Plaintiff James Harris filed a Complaint for Declaratory and Prospective Relief and Demand for Jury Trial against the City of Clearlake ("City") (erroneously sued as Clearlake Police Department),[1] and individual Defendants, Craig Clausen, Acting Chief of Police ("Clausen"); Tim Celli, Supervisor of Sargent Tim Hobbs ("Celli"); Tim Hobbs, police officer with rank of Sargent ("Hobbs"); and B. Middleton, police officer with rank of Officer ("Middleton"), (collectively, "Defendants").[2]  (Dkt. No. 1 ("Compl.").)  Plaintiff alleges four causes of action: (1) False Arrest and False Imprisonment for the September 3, 2011 traffic arrest, (2) Conspiracy and Retaliation in causing False Arrest, (3) Conspiracy and Retaliation in causing loss of personal property, and (4) False Arrest and False Imprisonment for the February 13, 2012 home arrest.  Plaintiff brings his action under Title 42 U.S., Sections 1981, 1983, and 1985(3); the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution; and Article I of the California State Constitution.  Plaintiff seeks nominal, compensatory and punitive damages amounting to one million dollars.

---

[1] Defendants appear to argue that Plaintiff erroneously sues the Clearlake Police Department ("Police Department") rather than the City.  If Plaintiff seeks to amend his Complaint, he should identify the proper Defendant.

[2] Defendants Clausen and Celli are only sued in their official capacity; Defendants Hobbs and Middleton are sued in both their official and individual capacity. Compl. at ¶¶ 8-11 at 3.

On May 15, 2012, Defendants filed a Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 15 ("Motion").) On May 22, 2012, Plaintiff filed an Opposition to Defendants' Motion to Dismiss. (Dkt. No. 18 ("Oppo.").) Defendants filed their Reply in support of their Motion to Dismiss on June 5, 2012. (Dkt. No. 20 ("Reply").) The Court held a hearing on the Motion on July, 10 2012. (Dkt. No. 22)

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby:

1. **DENIES** Defendants' Motion to Dismiss as to that portion of the First Claim for false arrest and false imprisonment under the Fourth Amendment for the September 3, 2011 traffic arrest;

2. **DISMISSES WITH LEAVE TO AMEND** as to that portion of the Second Claim for conspiracy and retaliation for false arrest under section 1985(3);

3. **DISMISSES WITH LEAVE TO AMEND** as to that portion of the Third Claim for conspiracy and retaliation for cause of loss of personal property under section 1985(3);

4. **DENIES** the Motion to Dismiss as to that portion of the Fourth Claim for false arrest and false imprisonment under the Fourth Amendment for February 13, 2012 house arrest.

5. Liberally construed, the Court reads the Complaint to include a 1983 Claim against the City based upon *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("*Monell*"). The Court therefore **DISMISSES WITH LEAVE TO AMEND** the section 1983 *Monell* claim against the City.

6. Liberally construed, the Court reads the Complaint to include an Eighth Amendment Claim based upon the False Imprisonment Claims. The Court therefore **DISMISSES WITHOUT LEAVE TO AMEND** the Eighth Amendment Claim for Cruel and Unusual Punishment.

7. Liberally construed, the Court reads the Complaint to include a Fourteenth Amendment Claim for violation of Equal Protection based upon the False Arrest Claims. The Court therefore **DISMISSES WITH LEAVE TO AMEND** the Fourteenth Amendment Claim for Equal Protection.

8. Liberally construed, the Court reads the Complaint to include a Fourteenth Amendment Claim for violation of Due Process based upon the False Arrest Claims. The Court therefore **DISMISSES WITHOUT LEAVE TO AMEND** the Fourteenth Amendment Claim for Due Process.

9. Liberally construed, the Court reads the Complaint to include a 1981 Claim based upon the False Arrest Claims. The Court therefore **DISMISSES WITH LEAVE TO AMEND** the 1981 Claim for Racial Discrimination under the Color of Law.

10. **DENIES** the Motion to Dismiss Defendants Clausen, Celli, Hobbs and Middleton based on Qualified Immunity.

11. **GRANTS THE MOTION TO STRIKE** the Punitive Damages claim as against Defendants the City, Clausen, and Celli. **DENIES THE MOTION TO STRIKE** as against Hobbs and Middleton.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 2011, at about 10:00 a.m., Plaintiff was stopped and detained, and after a period of about forty minutes, arrested by Defendant Hobbs for "resisting arrest."[3] Compl.[4] at ¶¶ 7 at 5. While detained, Hobbs told Plaintiff that he "needed to stop doing paperwork. That isn't good for you. You should stop." *Id.* at ¶ 8 at 5. Defendant issued Plaintiff a Traffic Citation and a "Verbal Notice by Peace Officer, DMV or Court Employee," both of which Plaintiff did not sign and instead wrote "without prejudice." *Id.* at ¶ 9 at 5; Motion at 3. Plaintiff was not given a copy of the Citation as he was arrested immediately after not signing his traffic citation.[5] Compl. at ¶ 9 at 5. Plaintiff was

---

[3] Although not referenced in the Complaint, Cal. Pen. Code § 148(a) allows a peace officer to arrest a person who willfully resists, delays, or obstructs in an officer in discharge of his official duties.

[4] Plaintiff mis-numbers the paragraphs in his Complaint starting at ¶ 16 on page 4. The Complaint starts to renumber on p. 5 beginning with "¶ 6." To distinguish between duplicate paragraphs, all citations to the Complaint include the paragraph number and page number as follows: "Compl. at ¶ _ at #."

[5] Although not referenced in the Complaint, Cal. Veh. Code § 40302(b) requires individuals who refuse to sign a written promise to appear in court to be "taken without unnecessary delay before a magistrate within the county in which the offense charged is alleged to have been committed and who has jurisdiction of the offense and is nearest or most accessible with reference to the place where the arrest is made."

3

released four days later on September 7, 2011 without any charges.[6] *Id*. at ¶ 24 at 7.  Upon returning home on September 7, 2011, Plaintiff discovered certain items missing from his home, specifically eighteen medical/spiritual marijuana plants, two computer towers, and a wireless camera and its receiver.[7] *Id.* at ¶ 31 at 8-9.

On December 15, 2011, Plaintiff met with Defendant Celli at the Clearlake Police Department to try to obtain a copy of the Traffic Citation and Verbal Notice issued by Hobbs on September 3, 2011.  Compl. at ¶ 17 at 6.  While Plaintiff received a copy of the Verbal Notice on September 7, 2011 in the mail, Plaintiff's request for his Traffic Citation was rejected.  *Id.* at ¶¶ 15 at 6; 17 at 6.  Instead, Plaintiff was told to speak to Defendants' lawyer to get a copy of his Traffic Citation.  *Id.* at ¶ 17 at 6.

On February 13, 2012, at about 4:35 p.m., Defendant Middleton arrested Plaintiff while at home for "resisting arrest" within five minutes of opening his front door.  Compl. at ¶ 18-20 at 6.  Plaintiff states that when he inquired as to the nature and purpose of the investigation, Officer Middleton told him to "not yell across the fence at his neighbors" as it violated the alleged temporary restraining order that had been placed on him by his neighbors.  *Id.* at ¶ 19 at 6.  Plaintiff asserts that he had not been served with notice of the restraining order and when he sought to inquire further, Defendant "placed him in handcuffs and told him he was under arrest" (although Defendant later asserted that he was just being detained).  *Id.*  Plaintiff was later charged for (1) resisting arrest under Pen. Code § 148(a), and (2) unlawfully fighting in a public place and maliciously disturbing another person by a loud and unreasonable noise under Pen. Code § 415.  *Id.* at ¶ 20 at 6-7.  Plaintiff was released two days later on February 15, 2012 without any charges.  *Id.* at ¶ 34 at 9.

---

[6] Defendants note that Plaintiff was released on Wednesday, September 7, 2011, because he was arrested on the Saturday before Labor Day and the courts did not reopen until Tuesday, September 6; Plaintiff was released the following day. Motion at 8.

[7] Plaintiff's Opposition also distinguishes this "break in" of his house from previous break ins in 2005 and 2009. Oppo. at 7-9.  Plaintiff asserts that this break in differed because his marijuana plants were cut down as opposed to his supplies and paraphernalia (seeds, pipes, papers, etc.) being stolen as had previously occurred. *Id.* at 7-8.  Also, the wires of the computer towers were also neatly unplugged rather than cut or ripped out. *Id.* at 8-9.  Plaintiff also notes that in previous break ins, all items of value (jewelry, TV, digital camera, etc) had been stolen and his computers had been left untouched since they have little intrinsic value.  However, in this break in, Plaintiff asserts that his computers were stolen for the data which was priceless and necessary to preparing his other cases against the City. *Id.*

4

## II. DISCUSSION

Defendants move to dismiss Plaintiff's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Defendants contend as follows. First, Plaintiff did not suffer a deprivation of a constitutionally protected interest. Second, if Plaintiff was deprived of a constitutionally protected interest, Defendants did not cause such deprivation through an official policy, custom or usage of the Police Department. Third, Defendants are entitled to qualified immunity. Finally, Plaintiff fails to plead his conspiracy claims with adequate specificity. Motion at 2. The issue before the Court is whether Plaintiff alleges with sufficient specificity to survive a 12(b)(6) motion to dismiss.

### A.   Legal Standard for Motion for to Dismiss under Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint, facilitating dismissal to the extent the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554 (2007) ("*Twombly*") (quoting Fed. R. Civ. P. 8(a)(2)). The pleading is construed in the light most favorable to the non-moving party and all material allegations in it are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) ("*Iqbal*") ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

5

Under *Twombly,* a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 679 (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly,* 550 U.S. at 556–57) (internal quotation marks omitted). In sum, if the facts alleged foster a reasonable inference of liability—stronger than a mere possibility—the claim survives; if they do not, the claim must be dismissed. *See Iqbal,* 556 U.S. at 679.

Ordinarily, a pro se complaint will be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). The pro se complaint will be dismissed only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). As the Ninth Circuit has recently clarified, courts "continue to construe pro se filings liberally when evaluating them under *Iqbal. Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010). While the standard is higher, our 'obligation' remains, 'where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Id.* (quoting *Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc)). However, the Court "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982); *see also Ghazali v. Moran,* 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.").

For ease of analysis, the Court will address Plaintiff's claims by grouping like categories together. As a result, the claims may be addressed out of order.

6

### B. Section 1983 Claims

Section 1983 "provides a remedy to individuals whose constitutional rights have been violated by persons acting under color of state law." *Caballero v. City of Concord*, 956 F.2d 204, 206 (9th Cir. 1992) (internal citations omitted). To state a claim under section 1983, a plaintiff "must show that the defendants (1) acted under color of state law, and (2) deprived the plaintiffs of rights secured by the constitution." *Borunda v. Richmond*, 885 F.2d 1384, 1391 (9th Cir. 1988) (citing *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 624 (9th Cir.1988)).

#### 1. Plaintiff's *Monell* Claim against the City

Plaintiff argues that his false arrest and false imprisonment without probable cause and loss of personal property violate his constitutional rights pursuant to section 1983. Compl. at ¶ 38 at 10. Specifically, Plaintiff claims that such acts occurred as a direct result of the failures of Defendants Clausen and Celli, to "properly train, supervise, and/or instruct [Defendants Hobbs and Middleton] with regard to proper arrest procedures" and/or "establish policies, practices and/or procedures in compliance with existing law." *Id.* at ¶¶ 25 at 7; 35 at 9.

"A municipality's failure to train or supervise its employees properly can create section 1983 liability where such failure is 'conscious' or amounts to deliberate indifference to the rights of persons' with whom its employees are likely to come into contact." *Buckheit v. Dennis,* 713 F. Supp. 2d 910, 920 (N.D. Cal. 2010) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Such deliberate indifference can be shown with evidence that the municipality "had notice of but repeatedly failed to make any meaningful investigation into charges that its agents were violating citizens' constitutional rights." *DeCarlo v. Fry*, 141 F.3d 56, 61-62 (2d Cir. 1998) (internal citations and quotations omitted). The Supreme Court has noted that "[d]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* 131 S. Ct. 1350, 1360 (2011) (internal citations and quotations omitted).

A plaintiff must satisfy three elements: (1) the training program is inadequate in relation to the tasks the officers must perform; (2) if the training program is inadequate, it constitutes a policy whereby city officials are deliberately indifferent to the rights of persons with whom the officers come into contact with; and (3) the inadequacy of training must have actually caused the constitutional

deprivation. *Merrit v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (internal citations and quotations omitted). Recent decisions on the current pleading standard have held that only minimal specificity is required, particularly because the defendants are "likely to hold greater access to relevant evidence as to its policies, customs and practices." *Haines v. Brand*, No. C-11-1335 EMC, 2011 WL 6014459, at *5 (N.D. Cal. Dec. 2, 2011). However, a plaintiff still must allege with sufficient specificity the particular facts that plausibly show that such policy was deliberately indifferent to Plaintiff's constitutional rights. *Id.* at 5-6.[8]

      Defendants argue that Plaintiff has not stated a claim because he has not met the deliberate indifference standard in showing that the City had notice of the possibility that police officers were violating citizens' constitutional rights and failed to respond accordingly. Motion at 4. Defendants argue that Plaintiff must produce some evidence that the City had a custom or practice that violated citizens' constitutional rights. Plaintiff alleges the following misconduct from individual Defendants: (1) Hobbs's false arrest and comment regarding paperwork, (2) Celli's denial of giving Plaintiff a copy of his traffic citation, and (3) Middleton's "inquisition" and subsequent false arrest. Compl. at ¶¶ 7-8 at 5, 17 at 6, 19-20 at 6-7.

      Plaintiff's allegations fail to show that Defendant has an inadequate police training program or faulty arrest procedure that causes people to be falsely arrested and falsely imprisoned. Even if each distinct act by Defendants constituted some form of misconduct, it does not establish a policy of deliberate indifference to the rights of those who Defendants come into contact with. *City of Canton*, 489 U.S. at 390-391 (the fact that a "particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."). Plaintiff's allegations also fail to establish that Defendant had any notice that its officers violated the constitutional rights of citizens nor does he allege that such acts resulted from an inadequate training program that gives rise to municipal liability against the City. There are no facts alleged supporting the conclusion that Defendants failed to properly "train,

---

[8] In *Haines,* the court held that plaintiff's specific allegations that - defendants (i) failed to train members to respond to persons seeking sources of physical sustenance and desiring to obtain lay counseling while detained by police, (ii) failed to have adequate resources and relevant training necessary to properly assess every traumatized person, and (iii) that others like plaintiff were targeted for police detentions prior to face to face assessment - were sufficiently specific to identify a relevant custom or policy.

8

supervise, and/or instruct." *See Haines v. Brand*, 2011 WL 6014459, at *5-6 (plaintiff must identify specific areas in which the defendant's training was deficient; "it is the specific language pertaining to what [d]efendants have done or failed to do that is important.").

Since Plaintiff's claim, as written, does not sufficiently articulate a *Monell* claim, the failure to train claim against the City is **DISMISSED WITH LEAVE TO AMEND**. If Plaintiff seeks to amend this claim, he must provide facts—not merely conclusions or speculation—regarding the "official policy," "long-standing practice or custom," or faulty training program that resulted in the arresting of individuals without probable cause or how the policy was deliberately indifferent to Plaintiff's rights. *Haines*, 2011 WL 6014459, at *4-6 (internal citations omitted). These facts must be sufficiently stated such that the Court *may reasonably infer* that there is a plausible claim.

### 2. Claims for False Arrest and False Imprisonment

An "arrest without probable cause violates the fourth amendment and gives rise to a claim for damages under § 1983." *Borunda,* 885 F.2d at 1391 (internal citation omitted). However, the existence of probable cause, when the underlying facts are disputed, is a question for the jury and cannot be resolved on a motion to dismiss. *Id.* To state a claim for false arrest under fourth amendment rationale, "a plaintiff seeking to sue non-prosecutorial officials alleged to be responsible post-complaint for the arrest or prosecution [must] show the absence of probable cause." *Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008)). Although probable cause is "incapable of precise definition or quantification," *Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003), it is widely understood that "[p]robable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested," *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio,* 379 U.S. 89, 91 (1964)); *accord Edgerly v. City and Cnty. of S.F.,* 599 F.3d 946, 953 (9th Cir. 2010).

Plaintiff argues that his false arrest and false imprisonment violate his Fourth Amendment rights. Compl. at ¶¶ 1 at 1, 27 at 7, 30 at 8, 32 at 9, 37 at 9. Plaintiff's Fourth Amendment claim is derivative of his false arrest claim. To survive a motion to dismiss, Plaintiff must set out a plausible

claim that his Fourth Amendment rights were violated based on his false arrest,[9] which give rise to section 1983 liability in depriving him of his constitutional rights. Plaintiff's Complaint alleges that he was falsely arrested and falsely imprisoned without probable cause on two separate occasions: (1) the traffic arrest on September 3, 2011 (first claim) and (2) the house arrest on February 13, 2012 (fourth claim).

### a. First Claim: Traffic Arrest on September 3, 2011

Plaintiff was stopped, detained, and after about forty minutes, arrested by Hobbs who claimed Plaintiff resisted arrest. Compl. ¶ 7 at 5. Plaintiff alleges that while detained, Hobbs told Plaintiff that he "needed to stop doing paperwork. That isn't good for you. You should stop." *Id.* Plaintiff also states that prior to his arrest, he was issued a Verbal Notice and a traffic citation, both of which he did not sign. Plaintiff was imprisoned in Lake County Jail for four days until his release without charges on September 7, 2011. *Id.* at ¶ 24 at 7.

Defendants argue that they did not violate Plaintiff's constitutional rights because he was lawfully arrested for refusing to give a written promise to appear in court in violation of Cal. Veh. Code § 40302(b). Motion at 7-8. Defendants argue that Plaintiff was held for four days because he was arrested on the Saturday before Labor Day and he was released a day after the courts reopened on Tuesday, September 6, 2011. Furthermore, Defendants assert that the fact that Plaintiff was released without charges is immaterial because the District Attorney's office is the one who determines whether Plaintiff should be charged and their burden of proof (beyond a reasonable doubt) is significantly higher than the police officer's burden (probable cause). Motion at 8.

While it is unclear why Plaintiff was stopped and detained and whether Defendant Hobbs had probable cause,[10] Plaintiff was arrested solely for not signing his traffic citation and resisting arrest.

---

[9] Plaintiff also makes a Fourth Amendment, "search and seizure claim," based on the alleged conspiracy to cause loss of property (third claim). This third claim is discussed below in section D, "Conspiracy and Retaliation under section 1985." Since that claim should be dismissed with leave to amend, Plaintiff is not currently able to sufficiently state a Fourth Amendment, "search and seizure claim."

[10] Defendants' Case Management Statement indicates that Plaintiff was initially stopped while on his bicycle for going north in southbound lanes separated by yellow double solid lines in violation of Cal. Veh. Code § 21460. (Dkt. No. 19, Defendant's Case Management Statement at 2-3).

Plaintiff was then held in Lake County Jail for four days before being released without charges,[11] although it is also unclear whether a probable cause determination was made within forty eight hours of the warrantless arrest. Furthermore, Defendants have not provided Plaintiff with a copy of his traffic citation. Taking such allegations as true, Plaintiff has sufficiently alleged a lack of probable cause as there was no specific reason for Officer Middleton to arrest him for "resisting arrest." It appears that Defendants may have also unreasonably delayed Plaintiff's probable cause determination as he was held for four days before his release without charges.[12] For these reasons, the Court **DENIES** the Motion to Dismiss the fourth claim for false arrest and false imprisonment.

### b. Fourth Claim: House Arrest on February 13, 2012

Plaintiff was arrested for "resisting arrest" by Officer Middleton within five minutes of opening the front door of his home. Compl. at ¶ 18 at 6. Plaintiff alleges that after he opened his door, Officer Middleton identified himself and began asking Plaintiff a series of personal questions. *Id.* at ¶ 19 at 6. Officer Middleton told Plaintiff that he "would not yell across the fence at his neighbors" in violation of the temporary restraining order placed by his neighbor. *Id.* Plaintiff alleges that he had not been served and when he sought to inquire further, Officer Middleton placed him in handcuffs and arrested him (although Plaintiff notes that Officer Middleton later asserted that he was just being detained). *Id.* Plaintiff was imprisoned in Lake County Jail for two days until his release without charges on February 15, 2012. *Id.* at ¶ 34 at 9.

Taking as true the allegations in the Complaint, Plaintiff has sufficiently alleged a lack of probable cause. Plaintiff alleges he was unaware of a temporary restraining order and merely inquired as to the purpose of the officer's visit. Based on the allegations, the officer did not observe Plaintiff

---

[11] Defendants' Case Management Statement indicates that after Plaintiff was booked into jail, Judge Hedstrom advised Hobbs to solely charge Plaintiff with the California Vehicle violations: sections 40302(b) (for not signing a promise to appear in court) and 21460 (for going north in southbound lanes separated by yellow double solid lines). Hobbs did not send the police report for the "resisting arrest" violation under Cal. Pen. Code § 148. Defendant's Case Management Statement at 2-3.

[12] An individual arrested without a warrant "shall in all cases be taken before the magistrate without unnecessary delay, and in any event, within 48 hours after his or her arrest, excluding Sundays and holidays." Cal. Pen. Code §§ 825, 849; *See also County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991) (A probable cause determination provided within 48 hours may still be unreasonable. Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, delay motivated by ill will, or delay for delay's sake. When an arrested individual does not receive a probable cause determination within 48 hours, the burden of proving an unreasonable delay shifts to the government).

11

breaking the alleged temporary restraining order, and did not possess a valid underlying basis for arrest. Therefore, Plaintiff could not be deemed to have "resisted" such an arrest. Further, as alleged, Plaintiff was arrested for a *public* disturbance in his own *private* home. For these reasons, the Court **DENIES** the Motion to Dismiss the fourth claim for false arrest and false imprisonment.

### 3. Eighth Amendment Claim: "Cruel and Unusual Punishment"

Plaintiff argues that Defendants violated his Eighth Amendment rights by causing him "imprisonment without probable cause [and] subjected [him] to acts and practices constituting 'cruel and unusual punishment.'" Compl. at ¶ 27 at 7-8. The Eighth Amendment generally "applies to prisoners" in prohibiting cruel and unusual punishment. *Gomez v. City of Fremont*, 730 F. Supp. 2d 1056, 1058-1059 (N.D. Cal. 2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). According to the Supreme Court, the Eighth Amendment's prohibition of "cruel and unusual punishment" applies only "after conviction and sentence." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (citing *Graham v. Conor*, 490 U.S. 386, 393 & n.6 (1989) (internal citations omitted). Since pretrial detainees "are not convicted prisoners," they are not accorded any rights under the Eighth Amendment. *Id.* (citing *Carnell v. Grimm*, 74 F.3d 977, 979, 9th Cir. 1996). Rather their rights arise under the Due Process Clause of the Fourteenth Amendment. *Id.* (citing *Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)). Since Plaintiff is not a convicted prisoner, the Eighth Amendment does not apply to Plaintiff (although Plaintiff could raise a claim for Due Process under the Fourteenth Amendment). Accordingly, Plaintiff's Eighth Amendment claim is **DISMISSED WITHOUT LEAVE TO AMEND** as it is not a legally cognizable claim.

### 4. Fourteenth Amendment Claim: "Due Process"

Plaintiff's allegation that Defendants violated his due process rights under the Fourteenth Amendment is derivative of his Fourth Amendment claim based on his alleged false arrest. The Supreme Court has held that an arrestee's incarceration based on a warrant without probable cause does not violate his substantive due process rights, but rather implicates his Fourth Amendment rights. *Albright v. Oliver*, 510 U.S. 266, 274-275 (1994). Therefore, Plaintiff's due process claim is **duplicative** and is **DISMISSED WITHOUT LEAVE TO AMEND** because the Court already addresses his false arrest in his Fourth Amendment claim above.

### 5. Fourteenth Amendment Claim: "Equal Protection"

Plaintiff alleges that Defendants violated his rights to Equal Protection by conspiring to cause his false arrest and loss of personal property because of his "race, political and/or religious beliefs as retaliation of [his] Activistic activities." Compl. at ¶¶ 29, 31 at 8. To state a claim for violation of Equal Protection under the Fourteenth Amendment, a plaintiff must allege that the individual defendants, acting under color of state law "acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000). A "long line of Supreme Court cases make clear that the Equal Protection clause requires proof of discriminatory intent or motive." *Navarro v. Block*, 72 F.3d 712, 716 (9th Cir. 1995). Plaintiff must show that such discriminatory intent was "based upon his membership in a protected class." *Haines*, 2011 WL 6014459, at *11 (internal citations omitted) (finding that plaintiff failed to provide a factual basis that anyone else similarly situated was treated any differently than himself).

Plaintiff's Complaint fails to allege any facts of discriminatory intent. Plaintiff does not indicate whether he is part of a protected class nor does he explain how he was treated differently from any other members of a protected class.[13] Because Plaintiff's claim, as written, does not state a plausible claim for discriminatory intent or different treatment based on race, his claim is **DISMISSED**. However, the Court grants this dismissal **WITH LEAVE TO AMEND**. If Plaintiff seeks to re-allege this claim, Plaintiff must provide a factual basis regarding his racial background, political and religious activities, and/or personal beliefs and specify how Defendants intentionally singled him out based on such background, activities, and/or beliefs. These facts must be stated sufficiently such that the Court *may reasonably infer* that there is a plausible claim.

### C. 1981 Claim: "Racial Discrimination"

Plaintiff asserts a section 1981 claim based on the claim arising from his alleged false arrest on September 3, 2011. Compl. at ¶ 38 at 10. To establish a claim under section 1981, Plaintiff must allege facts showing: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities

---

[13] Plaintiff's Complaint does not indicate his racial background, political activities or personal beliefs. However, in his Opposition, Plaintiff argues that Defendant Middleton had a discriminatory motive because Plaintiff "was a black man questioning the white officer about why the white officer was asking personal questions of the black man." Oppo. at 5.

13

enumerated in the statute. *Probity Ins. Servs., Inc. v. United Agricultural Benefit Trust,* No. 10-CV-3500 PSG, 2011 WL 1936581, at *2 (N.D. Cal. May 20, 2011) (citing *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 7 F.3d 1085, 1087 (2nd Cir.1993)).

Like his Equal Protection claim above, Plaintiff fails to allege facts supporting the conclusion that Defendants intended to discriminate; nor does he show that Defendants actually discriminated against him on the basis of race. Plaintiff also does not indicate in his Complaint that he is a member of a racial minority and does not show Defendant acted with discriminatory intent. Because Plaintiff's claim, as written, does not state a plausible claim for racial discrimination, his claim is **DISMISSED WITH LEAVE TO AMEND**. If Plaintiff seeks to re-allege this claim, he must provide a factual basis regarding each of the elements of the claim.

### D.  Second and Third Claims: "Conspiracy and Retaliation" under Section 1985

To establish a civil conspiracy claim under section 1985(3), a plaintiff must allege facts in support of the following elements: (1) a conspiracy, (2) an intent to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person, property, or deprived of a civil right. *United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828-829 (1983). To establish the second element, a plaintiff must show that the conspiracy must be motivated by "some racial or perhaps otherwise-class based, invidious discriminatory animus behind the conspirator's actions." *Id.* at 829 (internal citations and quotations omitted).

To survive a 12(b)(6) for a civil conspiracy claim, a plaintiff must "provide some factual basis to support the existence of the elements of a conspiracy: [1] agreement and [2] concerted action." *Crabtree v. Muchmore*, 904 F.2d 1475, 1480-81 (10th Cir. 1990). The agreement need not be overt, but can be inferred from circumstantial evidence such as allegations that show that defendants' acts were unlikely to occur without an agreement. *Mendocino Envtl. Ctr. v. Mendocino County,* 192 F.3d 1283, 1301 (9th Cir. 1999). A plaintiff "must make more than a mere allegation that [d]efendants . . . engaged in conduct of conspiracy"; rather, he must "plead some factual basis showing agreement between the parties." *Cunningham v. North Versailles,* 2010 WL 391380, at *6 (W.D. Penn. Jan. 27, 2010); *see also Comm. for Immigrant Rights of Sonoma County v. County of Sonoma*, 644 F. Supp. 2d

14

1177, 1204 (N.D. Cal. 2009).[14] He need not show that each participant knew "the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).

Plaintiff alleges that the Defendants "conspired, contrived, engineered and/or acted to cause" his arrest and imprisonment and loss of personal property due to his "race, political and /or religious beliefs as retaliation for [his] Activistic activities within Lake County." Compl. at ¶¶ 29 at 8, 31 at 8. Plaintiff bases his both his conspiracy claims on (1) Defendant Hobbs' comment regarding paperwork, and (2) Plaintiff's failed attempt to acquire a copy of the citation and verbal notice. Compl. at ¶¶ 8 at 5, 17 at 6. Plaintiff contends that Hobbs' paperwork comment shows that he had some type of motive against him. Defendants argue that Plaintiff's allegations are vague and conclusory and fail to provide any factual basis to show that Defendants were motivated by racial discriminatory animus. Motion at 5-6.

The Court agrees that Plaintiff's claims are devoid of sufficient factual allegations. Plaintiff fails to establish the first element of showing that there was a conspiracy by Defendants and each of the individually named defendants. Hobbs' "paperwork comment" during Plaintiff's detention does not show, in and of itself, that Hobbs had agreed with each of the other Defendants to arrest Plaintiff or take his personal property. Defendants' denial of giving Plaintiff a copy of his citation, without more, also does not show any type of agreement or concerted action between the Defendants. While Plaintiff is able to allege with specificity all items that were stolen during the four-day period he was incarcerated, Plaintiff does not allege any facts showing that it is any more plausible that Defendants, rather than a third party, took Plaintiff's personal property. Plaintiff also fails to establish the second element of showing discriminatory animus. As stated above, the Complaint lacks facts showing discriminatory motive to deprive Plaintiff of his constitutional rights. Not only is it unclear what Plaintiffs' beliefs or activities are, but there are no facts regarding how Defendants knew about those beliefs or activities.

---

[14] In that case, the court found that plaintiff's allegations that defendants targeted Latinos who were criminal gang members and adopted an unlawful policy of relying on race to stop, detain and question people who appear to be Latino regarding their immigration status failed to show an agreement or meeting of the minds to deprive plaintiff of constitutional rights.

15

Plaintiff's civil conspiracy claims are **DISMISSED WITH LEAVE TO AMEND.** If Plaintiff seeks to re-allege this claim, Plaintiff must provide a factual basis for each of the elements of the claim.

### E.  Claims Regarding Individually Named Defendants Based on Qualified Immunity

Defendants argue that Plaintiff's claims against Clausen, Celli, Hobbs and Middleton should be dismissed because they are entitled to qualified immunity.  Motion at 6-7.  Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  A public official's shield of qualified immunity is lost only if a plaintiff can establish both that (1) taken in the light most favorable to the party asserting injury, the facts alleged show that the officer's conduct violated a constitutional right, and (2) the right at issue was "clearly established" at the time of the defendant's alleged misconduct.[15] *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson v. Callahan,* 555 U.S. 223 (2009).

Qualified immunity may be raised as a defense in a 12(b)(6) motion.  *Buckheit,* 713 F. Supp. 2d at 927.  When "a plaintiff asserts a Fourth Amendment violation based on the absence of probable cause, the relevant inquiry with respect to the 'clearly established' prong of the qualified immunity analysis is 'whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff."  *Id.* at 926 (internal citations and quotations omitted).  At this procedural stage, the Court must consider Plaintiff's allegations to be true.  He alleges a violation of his Fourth Amendment right to be free from arrest without probable cause.  U.S. Const. amend. IV.  The Court finds this to be a "clearly established" right, and therefore, declines to dismiss Plaintiff's allegations on grounds of qualified immunity.

### F.  Punitive Damages Claims

Plaintiff requests punitive damages based on the allegation that Defendants "knowingly, willfully, maliciously and with deliberate indifference and/or intentional disregard" caused Plaintiff's injuries. Compl. at ¶ 37 at 9.  Defendants argue that public entities are immune to punitive damages

---

[15] The Court has the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson,* 555 U.S. at 236.

under California State Law based on Cal. Gov. Code. § 818 ("a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."  Motion at 9.  Defendants also note that municipalities are immune from punitive damages under section 1983. *Id.* (citing *City of Newport v. Fact Concerts, Inc.* 453 U.S. 247, 271 (1981)).

Plaintiff cannot collect punitive damages for any violation of section 1983 against municipalities, the City or the Police Department.  *City of Newport,* 453 U.S. at 271 (1981).  Furthermore, Defendants are also immune from punitive damages under state law.  *See* Cal. Gov. Code. § 818; *Willingham v. City of San Leandro*, No. C-06-3744 MMC, 2006 WL 3734633, at *3 (N.D. Cal. Dec. 18, 2006) (court held plaintiff who sued city for false arrest could not seek punitive damages from a municipality under section 1983 based on *City of Newport* and Cal. Gov. Code § 818); *Committee for Immigrant Rights of Sonoma County,* 644 F. Supp. 2d 1177 at 1208 ("[a]ny amended complaint may not include a request for punitive damages that is directed at the County").  Further, the other two individually named Defendants, Clausen and Celli, are only sued in their official capacity.  Compl. at ¶¶ 8-9 at 3.  Accordingly, Plaintiff may collect punitive damages only against individual defendants Hobbs and Middleton because they are sued in both their individual and official capacities.  *Smith v. Wade*, 461 U.S. 30, 35 (1983) ("individual public officers [are] liable for punitive damages").  The Court dismisses Plaintiff's claim for punitive damages as directed to the City, Clausen, and Celli, but not to individual defendants, Hobbs and Middleton.

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss.  More specifically, the Court rules as follows:

1. **DENIES** Defendants' Motion to Dismiss as to that portion of the First Claim for false arrest and false imprisonment under the Fourth Amendment for the September 3, 2011 traffic arrest;

2. **DISMISSES WITH LEAVE TO AMEND** as to that portion of the Second Claim for conspiracy and retaliation for false arrest under section 1985(3);

3. **DISMISSES WITH LEAVE TO AMEND** as to that portion of the Third Claim for conspiracy and retaliation for cause of loss of personal property under section 1985(3);

4. **DENIES** the Motion to Dismiss as to that portion of the Fourth Claim for false arrest and false imprisonment under the Fourth Amendment for February 13, 2012 house arrest.

5. Liberally construed, the Court reads the Complaint to include a 1983 Claim against the City based upon *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("*Monell*"). The Court therefore **DISMISSES WITH LEAVE TO AMEND** the section 1983 *Monell* claim against the City.

6. Liberally construed, the Court reads the Complaint to include an Eighth Amendment Claim based upon the False Imprisonment Claims. The Court therefore **DISMISSES WITHOUT LEAVE TO AMEND** the Eighth Amendment Claim for Cruel and Unusual Punishment.

7. Liberally construed, the Court reads the Complaint to include a Fourteenth Amendment Claim for violation of Equal Protection based upon the False Arrest Claims. The Court therefore **DISMISSES WITH LEAVE TO AMEND** the Fourteenth Amendment Claim for Equal Protection.

8. Liberally construed, the Court reads the Complaint to include a Fourteenth Amendment Claim for violation of Due Process based upon the False Arrest Claims. The Court therefore **DISMISSES WITHOUT LEAVE TO AMEND** the Fourteenth Amendment Claim for Due Process.

9. Liberally construed, the Court reads the Complaint to include a 1981 Claim based upon the False Arrest Claims. The Court therefore **DISMISSES WITH LEAVE TO AMEND** the 1981 Claim for Racial Discrimination under the Color of Law.

10. **DENIES** the Motion to Dismiss Defendants Clausen, Celli, Hobbs and Middleton based on Qualified Immunity.

11. **GRANTS THE MOTION TO STRIKE** the Punitive Damages claim as against Defendants the City, Clausen, and Celli. **DENIES THE MOTION TO STRIKE** as against Hobbs and Middleton.

Plaintiff may amend his Complaint *only to the extent provided in this Order*. Plaintiff may not attempt to revive any claim dismissed herein. Moreover, he may not add any new claims to the First Amended Complaint ("FAC"). Plaintiff's FAC shall be filed by within twenty-right (28) days of this Order. Defendants' response shall be filed within twenty-eight (28) days of receipt of the FAC.

This Order terminates Dkt. No 15.

**IT IS SO ORDERED.**

Dated: July 25, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**