United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES L. HARRIS,<br><br>    Plaintiff,<br><br>vs.<br><br>CITY OF CLEARLAKE, et al.,<br><br>    Defendants. | Case No.: 12-0864-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS MOST OF PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Plaintiff James Harris filed a First Amended Complaint for Declaratory and Prospective Relief and Demand for Jury Trial ("FAC") against the City of Clearlake ("City") and individual Defendants Acting Chief of Police Craig Clausen ("Clausen"), Sergeant Tim Celli ("Celli"), and Sergeant Tim Hobbs ("Hobbs") (collectively, "Defendants").[1] (Dkt. No. 28.) Plaintiff alleges four claims in the FAC: two claims for false arrest and false imprisonment and two claims for conspiracy and retaliation. Plaintiff brings his action under 42 U.S.C. sections 1981, 1983, and 1985(3), and the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution.

On August 24, 2012, Defendants filed a Motion to Dismiss Most of Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. Proc. 12(b)(6). (Dkt. No. 34 ("Motion" or "Mot.").) On September 14, 2012, Plaintiff filed an Opposition to Defendants' Motion to Dismiss. (Dkt. No. 37 ("Opposition" or "Opp.").) Defendants filed their Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss Most of Plaintiff's First Amended Complaint on September 17, 2012. (Dkt. No. 38 ("Reply").) The Court found that the Motion was appropriate for decision without oral argument

---

[1] The individual Defendants are sued in their official and individual capacities. As is discussed in more detail *infra* at Section II.G, Plaintiff names Rank Officer B. Middleton as a Defendant in the body of the FAC, but failed to include Officer Middleton in the caption.

pursuant to Fed. R. Civ. P. 78(b) and Civ. L.R. 7-1(b) and took the matter under submission without hearing. (Dkt. No. 40.)

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby:

1. **DISMISSES WITH PREJUDICE** the City of Clearlake as a Defendant in this action;

2. **DISMISSES WITH PREJUDICE** Defendants Clausen and Celli in their official capacities;

3. **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's claims for conspiracy and retaliation in the second and third claims;

4. **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's Eighth Amendment claim for cruel and unusual punishment;

5. **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's Fourteenth Amendment due process claim;

6. **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's Fourteenth Amendment equal protection claim; and

7. **DENIES** Defendant's Motion as to dismissing Officer Middleton.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed the FAC in response to the Court's prior Order Granting in Part and Denying in Part Defendants' Motion to Dismiss. (Dkt. No. 27 ("Prior Order").) According to the FAC, Plaintiff was stopped and detained by Defendant Hobbs on September 3, 2011 while riding a bicycle for crossing a double yellow line in violation of Cal. Veh. Code section 21460. (FAC ¶ 25.) While detained, Hobbs told Plaintiff to "stop doing paperwork. It's not good for you. You need to stop it." (*Id.* ¶ 26.) Plaintiff was issued a "Traffic Citation" and a "Verbal Notice by Peace Officer, DMV or Court Employee," neither of which Plaintiff signed but he instead wrote "without prejudice." (*Id.*) Plaintiff was arrested for resisting arrest in violation of Cal. Pen. Code section 148(a)(1).[2] (*Id.*) Plaintiff was not given a copy of the Traffic Citation as he was arrested immediately after signing it

---

[2] Although not referenced in the FAC, Cal. Veh. Code section 40302(b) requires individuals who refuse to sign a written promise to appear in court to be "taken without unnecessary delay before a magistrate within the county in which the offense charged is alleged to have been committed and who has jurisdiction of the offense and is nearest or most accessible with reference to the place where the arrest is made."

2

"without prejudice." (*Id.*) Plaintiff was released four days later on September 7, 2011 without any charges. (*Id.*) Also on September 7, Plaintiff received in the mail a copy of the Verbal Notice by Peace Officer, DMV or Court Employee. (*Id.* ¶ 29.)

Upon returning home on September 7, 2011, Plaintiff discovered certain items missing from his home, specifically eighteen medical/spiritual marijuana plants, two computer towers, and a wireless camera and its receiver/sender. (FAC ¶¶ 27–28.)

On December 15, 2011, Plaintiff met with Defendants Celli and Clausen at the Clearlake Police Department and requested a copy of the Traffic Citation issued by Hobbs on September 3, 2011. (FAC ¶ 32.) Plaintiff "made it known that he intended to use the 'citation' for litigation purposes." (*Id.*) Plaintiff alleges that once he made this fact known, Defendant Celli rejected his request and told him to "talk to his [Celli's] lawyer" to get a copy. (*Id.* (alteration in original).)

On February 13, 2012, Defendant Middleton arrested Plaintiff at his home. (FAC ¶ 33.) Plaintiff alleges that this occurred within five minutes of opening his front door. (*Id.*) Plaintiff alleges that Middleton identified himself and began asking Plaintiff personal questions, to which Plaintiff responded by asking about the nature and purpose of Middleton's inquiry. (*Id.*) Middleton then told Plaintiff "not [to] yell across the fence at his neighbors" and that a temporary restraining order had been placed on him by his neighbors. (*Id.*) Plaintiff alleges that he had not been served with notice of the restraining order and that when he sought to inquire further, Middleton "placed [him] in handcuffs and told him that he was under arrest." (*Id.*) Plaintiff alleges that Middleton later asserted he was only being detained. (*Id.*) Plaintiff was subsequently arrested for resisting arrest in violation of Cal. Pen. Code section 148(a)(1) and was later charged with a violation of Cal. Pen. Code section 415.[3] (FAC ¶ 34.) Plaintiff was released two days later on February 15, 2012 without any charges. (*Id.*)

Plaintiff's first claim alleges false arrest and false imprisonment based on his September 3, 2011 arrest by Hobbs. (FAC ¶¶ 36–39.) Plaintiff's fourth claim alleges false arrest and false imprisonment based on the February 13, 2012 arrest by Middleton. (FAC ¶¶ 61–64.) Both the first

---

[3] Although not referenced in the FAC, Cal. Pen. Code section 415 prohibits unlawfully fighting in a public place, malicious and willful disturbance of others by loud and unreasonable noise, and use of offensive words in a public place.

and fourth claims allege violations of the Fourth, Eighth, and Fourteenth Amendments  (*Id.* ¶¶ 38–39 & 63–64.)

Plaintiff alleges conspiracy and retaliation in his second and third claims.  The second claim is based on a conspiracy to cause Plaintiff's arrest on September 3, 2011 ("Conspiracy to Arrest Claim").  (FAC ¶¶ 40–50.)  Plaintiff alleges that his arrest was the direct result of the City's failure to properly train, supervise, and instruct Defendants as to what constitutes probable cause for arrest and/or the result of a conspiracy by the police officer Defendants based on Plaintiff's "political/religious beliefs and/or Activistic activities in the County of Lake."  (FAC ¶¶ 41 & 45.)  As part of this claim, Plaintiff re-alleges Hobbs' statement prior to his arrest that he needed to "stop doing paperwork," that he returned home on September 7 to find his marijuana plants and computer equipment missing, and that he requested a copy of the Traffic Citation issued by Hobbs but was rejected after "ma[king] it known" that he intended to use it for litigation purposes.  (*Id.* ¶¶ 42–44.)  Plaintiff alleges that Hobbs acted as part of the conspiracy in arresting him, and that Clausen and Celli participated in and furthered the same when they "protected" Hobbs from Plaintiff's investigation and refused to provide him a copy of the Traffic Citation.  (FAC ¶¶ 46–48.)

Plaintiff's third claim for conspiracy is based on the removal of marijuana plants and computer equipment from his home while he was incarcerated from September 3–7, 2011 ("Conspiracy to Remove Property Claim").  (FAC ¶¶ 51–60.)  While re-alleging many of the same facts as the Conspiracy to Arrest Claim, Plaintiff also alleges that "based upon the statement made to [P]laintiff by Hobbs, . . . Hobbs caused [P]laintiff's false arrest as part of a conspiracy to provide for the removal of [P]laintiff's computers from his home."  (FAC ¶ 56.)  Plaintiff alleges that Hobbs, Clausen, and Celli conspired during the period of his false imprisonment to cause the destruction of his marijuana plants and the break-in at his home to remove his computers.  (*Id.* ¶ 57.)  Both the Conspiracy to Arrest and Conspiracy to Steal Claims allege violations of the Fourth, Eighth, and Fourteenth Amendments.  (FAC ¶¶ 50 & 59–60.)

4

## II. DISCUSSION

### A. Legal Standard for Motion for to Dismiss under Fed. R. Civ. P. 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint, facilitating dismissal to the extent the pleading fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). The pleading is construed in the light most favorable to the non-moving party and all material allegations in it are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Under *Twombly,* a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 679 (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly,* 550 U.S.

5

at 556–57) (internal quotation marks omitted). In sum, if the facts alleged foster a reasonable inference of liability—stronger than a mere possibility—the claim survives; if they do not, the claim must be dismissed. *See Iqbal,* 556 U.S. at 679.

Ordinarily, a pro se complaint will be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). The pro se complaint will be dismissed only if it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). As the Ninth Circuit has recently clarified, courts "continue to construe pro se filings liberally when evaluating them under *Iqbal. Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010). While the standard is higher, our 'obligation' remains, 'where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.'" *Id.* (quoting *Bretz v. Kelman,* 773 F.2d 1026, 1027 n. 1 (9th Cir. 1985) (en banc)). However, the Court "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982); *see also Ghazali v. Moran,* 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.").

Defendants raise six arguments in their Motion. The Court will address each in turn.

**B.     Whether Plaintiff Sufficiently Alleges a *Monell* Claim for Municipal Liability**

The City argues that it should be dismissed as a Defendant because Plaintiff has not met the pleading standard for municipal liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).[4] Here, Defendants argue that the FAC is void of any specific factual allegations showing a

---

[4] Defendants argue that under *Monell*, a plaintiff may establish liability against a city by proving that a municipal policymaker failed to adequately train its subordinates, if such failure amounts to deliberate indifference to the rights of the individuals who interact with the municipal employees. (Mot. at 4.) Deliberate indifference can be proven with evidence that the municipality had notice of the possibility that its employees were violating citizens' constitutional rights and failed to meaningfully investigate the charges or failed to discipline subordinates who violated civil rights. (*Id.*)

6

pattern of misconduct by the City or individual Defendants[5], a policy or custom of deliberate indifference that proximately caused the alleged violations of Plaintiff's constitutional rights, or that Defendants had an inadequate police training program or faulty arrest procedures that causes people to be falsely arrested and imprisoned. (*Id.* at 5; Reply at 3.) Defendants also argue that Plaintiff provides only conclusory allegations that the City had notice that its officers were violating citizens' constitutional rights and that such acts resulted from an inadequate training program. (Mot. at 5.)

Plaintiff responds that he has endured two separate arrests where the police had insufficient probable cause. (Opp. at 3.) In both incidents, he was arrested without "independently sustainable criminal activity to justify arrest" and for "resist[ing] arrest without any material showing that [he] actually resisted arrest." (*Id.* (internal quotations omitted).) Further, Plaintiff asserts that poor training and/or supervision *must be* the cause of his false arrests when it is necessary for a judge to tell the police that there had been no resisting arrest. Finally, Plaintiff asserts that evidence of poor training, supervision, and/or instruction exists because he was arrested in his private home for a public offense. (*Id.*)

Plaintiff has failed to overcome the deficiencies of his prior complaint with the FAC. The Court previously held that:

> Plaintiff's allegations fail to show that Defendant has an inadequate police training program or faulty arrest procedure that causes people to be falsely arrested and falsely imprisoned. Even if each distinct act by Defendants constituted some form of misconduct, it does not establish a policy of deliberate indifference to the rights of those who Defendants come into contact with. [*City of Canton v. Harris*, 489 U.S. 378, 390–391 (1989)] (the fact that a "particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program."). Plaintiff's allegations also fail to establish that Defendant had any notice that its officers violated the constitutional rights of citizens nor does he allege that such acts resulted from an inadequate training program that gives rise to municipal liability against the City. There are no facts alleged supporting the conclusion that Defendants failed to properly "train, supervise, and/or instruct." *See* [*Haines v. Brand*, No. C-11-1335 EMC, 2011 WL 6014459, at *5–6 (N.D. Cal. Dec. 2, 2011)] (plaintiff must identify specific areas in which the defendant's training was deficient; "it is the

---

[5] Defendants note that the same *Monell* requirements apply to claims against individual defendants in their official capacities because they are effectively claims against the City. (Mot. at 5.) As such, Defendants also seek dismissal of individual Defendants to the extent they are named in their official capacities.

7

        specific language pertaining to what [d]efendants have done or failed to do that is important.")

(Prior Order at 8–9.)  Plaintiff's allegation that the failure to train officers "as to what constitutes proper probable cause" does not provide the additional factual detail called upon by the Prior Order. The fact that Plaintiff was twice arrested and that no charges were ultimately brought does not state facts as to how the City inadequately trains its police officers regarding probable cause, nor does it rise to the level of sufficiently alleging how its arrest procedures themselves are faulty.  *Cf. Haines*, 2011 WL 6014459, at *5–6.[6]  Moreover, the FAC fails to explain how the City has acted with deliberate indifference to the rights of its citizens in relation to the allegedly inadequate training. Liberally construed, Plaintiff has alleged only two specific instances relating to himself where, taking the allegations as true, he was falsely arrested.  The Court cannot reasonably infer that Plaintiff has stated a plausible claim for municipal liability based on any policy, practice, or procedure.

        Because the FAC does not sufficiently articulate a *Monell* claim, the City is **DISMISSED WITH PREJUDICE** from this action.  In addition, Defendants Clausen and Celli are **DISMISSED WITH PREJUDICE** in their official capacities because Plaintiff has not stated a claim that they acted pursuant any municipal policy in inadequately training or supervising either Hobbs or Middleton.

### C.    Whether Plaintiff Sufficiently Alleges His Conspiracy Claims

        Defendants contend that Plaintiff has not sufficient pled his Conspiracy to Arrest or Conspiracy to Remove Property Claims.[7]  To state a claim under 42 U.S.C. section 1985, a plaintiff must allege, among other things, "an intent or purpose to deprive a person of equal protection of the law."  (Mot. at 5; *see* Prior Order at 14.)  This element is established where the conspiracy is motived by "some racial or perhaps otherwise-class based, invidious discriminatory animus behind the conspirator's actions."  (Mot. at 6.)  Defendants argue that more than vague or conclusory allegations

---

[6] *See also Merritt v. County of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989) (a plaintiff must satisfy three elements: (1) the training program is inadequate in relation to the tasks the officers must perform; (2) if the training program is inadequate, it constitutes a policy whereby city officials are deliberately indifferent to the rights of persons with whom the officers come into contact with; and (3) the inadequacy of training must have actually caused the constitutional deprivation).

[7] Defendants note that Plaintiff brought these claims under the Fourth, Eighth, and Fourteenth Amendments, but that these amendments do not provide relief for conspiracy claims.  Such relief may be sought under 42 U.S.C. section 1985.  (Mot. at 5.)

8

are required and that a plaintiff must allege *facts* showing a meeting of the minds of the conspirators and the overt arts in furtherance of the conspiracy. (*Id.*)

As to the Conspiracy to Arrest Claim, Defendants contend that Plaintiff has insufficient factual allegations that Defendants conspired to arrest him, to prevent him from investigating the arrest, or that there was any meeting of the minds. The fact that Hobbs arrested Plaintiff and that Clausen and Celli refused to provide him with a copy of the Traffic Citation are not sufficient to establish conspiracy. (Mot. at 6.) In addition, Plaintiff "fails to allege any factual support to establish that the Defendants were motivated by a class-based discriminatory animus, besides stating so in paragraph number 41." (*Id.*) Similarly, Defendants argue that Plaintiff has not met the requirements for his Conspiracy to Remove Property Claim by simply stating that Hobbs told him to stop doing paperwork and that his home was subsequently burglarized. (Mot. at 7.)

In his Opposition, Plaintiff concedes that he is presently unable to provide more detail on his conspiracy claims. (Opp. at 2 (arguing that the evidence is solely in the possession of Defendants).) Noting that he has still not even received a copy of the Traffic Citation from his September 3 arrest, he is "unable to demonstrate that defendants Hobbs, Celli and Clausen even 'encountered' each other during the period in question so as to show a 'meeting of the minds' as defendants so insist on." (*Id.*) Plaintiff asks the Court to allow him discovery on these claims so that he can substantiate the claims, but that if the Court will not allow such discovery, he would dismiss the conspiracy claims. In their Reply, Defendants argue that it is not proper to open discovery so that Plaintiff can go on a fishing expedition and discovery will otherwise commence after the pleadings are settled. (Reply at 3.)

The Court finds that Plaintiff's conspiracy claims must be dismissed because Plaintiff has failed to allege sufficient facts to support his claims. A motion brought under Fed. R. Civ. P. 12(b)(6) tests the sufficiency the complaint and it is a plaintiff's obligation to provide the grounds of his entitlement to relief with more than conclusions. *Twombly*, 550 U.S. at 555. The determination of whether the complaint is legally sufficient under Rule 12(b)(6) is typically made prior to the commencement of discovery. The Court does not believe it is appropriate to allow Plaintiff discovery at this time in order to allow an otherwise deficient claim to proceed. Plaintiff's second and third claims for conspiracy and retaliation are hereby **DISMISSED WITHOUT LEAVE TO AMEND**. However,

*if* discovery in this action reveals that Plaintiff has a legal basis to re-assert his conspiracy claims, Plaintiff may file a motion for leave to amend to re-add these claims and must attached a proposed complaint including the new allegations and precise conspiracy claim sought to be added. Such motion must specify the *facts* supporting any conspiracy claim.

### D.     References to the Eighth Amendment Throughout the FAC

Defendants contend that Plaintiff has improperly alleged that the four claims in the FAC violated his Eighth Amendment rights based on the Court's Prior Order. (Mot. at 8.) Plaintiff concedes that he misunderstood the Court's Prior Order and "would strike claims for violations of the Eighth Amendment," although he also seems to state that he cannot provide additional facts to sustain the claim. (Opp. at 2.)

The Court previously dismissed Plaintiff's Eighth Amendment claims for cruel and unusual punishment without leave to amend. (Prior Order at 12.) As such, the Court **GRANTS** Defendants' Motion and **STRIKES** all references in the FAC to the Eighth Amendment.

### E.     Fourteenth Amendment Due Process Claim

Defendants again argue that the Court previously dismissed without leave to amend Plaintiff's due process claim as duplicative of his Fourth Amendment claims. (Mot. at 8.) Plaintiff's Opposition generally addresses his Fourteenth Amendment claims, but seems to be addressing the equal protection claims and not the due process claims. (Opp. at 2.)

The Court previously dismissed Plaintiff's due process claims without leave to amend. (Prior Order at 12.) As such, the Court **GRANTS** Defendants' Motion to the extent that any of Plaintiff's claims reference the Fourteenth Amendment.

### F.     Fourteenth Amendment Equal Protection Claim

Defendants contend that Plaintiff's allegation that they are targeting him because of his "political/religious beliefs and/or because of [his] Activistic activities" is insufficient to state an equal protection claim. (Mot. at 8.) Specifically, Plaintiff "does not show that he is part of a protected class or explain how he was treated differently from any other members of a protected class." (*Id.* at 9.)

Plaintiff concedes that he is unable to provide sufficient facts to sustain this claim without discovery from Defendants. (Opp. at 2.) Plaintiff states that he would "strike" this claim under the Fourteenth Amendment if not given leave of discovery to show disparity of treatment. (*Id.*)

As noted above, the Court does not believe it is appropriate to permit discovery in order to allow an otherwise deficient claim to proceed. Defendant's Motion is **GRANTED** with respect to Plaintiff's equal protection claims under the Fourteenth Amendment. Pursuant to the Court's instructions in Section II.C, *supra*, Plaintiff may file a motion for leave to amend to re-add an equal protection claim under the Fourteenth Amendment *if* discovery in this action reveals that he has a legal basis for such claim. To eliminate any possible confusion, this Order *does not permit* Plaintiff to file a motion for leave to amend to re-add his *due process* claim under the Fourteenth Amendment.

Because the Court has dismissed both Plaintiff's due process and equal protection claims, the Court hereby **STRIKES** all references in the FAC to the Fourteenth Amendment.

### G. Defendant Middleton

Defendants argue that Defendant Middleton must be dismissed because he is not named in the title of the FAC. (Mot. at 9.) Plaintiff concedes that this was in error, but points out that this was merely typographical and that Middleton is named throughout the balance of the FAC. (Opp. at 2–3.) Plaintiff states that he did not intend to waive any of his claims against Middleton.

The Court agrees with Plaintiff that Defendant Middleton is clearly intended to be a Defendant based on the allegations in the FAC. Defendant Middleton cannot claim that he does not have fair notice of the claims against him, particularly in light of the fact that there is an operative claim for false arrest based on Middleton's arrest of Plaintiff that is not at issue in the pending Motion (and which has survived the prior motion to dismiss). Dismissal based on a typographical error is unwarranted. The Court **DENIES** Defendants' Motion as to Defendant Middleton.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss. More specifically, the Court:

1. **DISMISSES WITH PREJUDICE** the City of Clearlake as a Defendant in this action;
2. **DISMISSES WITH PREJUDICE** Defendants Clausen and Celli in their official capacities;

11

3. **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's claims for conspiracy and retaliation in the second and third claims;

4. **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's Eighth Amendment claim for cruel and unusual punishment;

5. **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's Fourteenth Amendment due process claim;

6. **DISMISSES WITHOUT LEAVE TO AMEND** Plaintiff's Fourteenth Amendment equal protection claims; and

7. **DENIES** Defendant's Motion as to dismissing Officer Middleton.

Plaintiff may not attempt to revive any claim dismissed in this Order, except that Plaintiff may file a motion for leave to amend as specifically stated herein. Defendants' response to the FAC shall be filed within fourteen (14) days of the date of this Order.

This Order terminates Dkt. No 34.

**IT IS SO ORDERED.**

Dated: January 8, 2013

                                               **YVONNE GONZALEZ ROGERS**
                                               **UNITED STATES DISTRICT COURT JUDGE**